717 P.2d 1132

**Alan R. ELDER, Petitioner-Appellant,**

v.

**Marjorie Lander PARK,
Respondent-Appellee.**

**No. 8008.**

Court of Appeals of New Mexico.

April 1, 1986.

Winston Roberts-Hohl, Barry Green, Santa Fe, for petitioner-appellant.

Richard S. Lees, Santa Fe, for respondent-appellee.

## OPINION

MINZNER, Judge.

Father appeals the trial court's order enforcing a New Hampshire court custody order, enjoining him from contesting custody in New Mexico while New Hampshire was exercising jurisdiction over the custody dispute, and dismissing his New Mexico petition for custody. The appeal raises issues that are controlled by the federal Parental Kidnapping Prevention Act (PKPA), 28 U.S.C.A. Section 1738A (Cum.P.P.1985), New Mexico's Child Custody Jurisdiction Act (CCJA), NMSA 1978, Sections 40–10–1 to –24 (Repl.Pamp.1983), and New Hampshire's Child Custody Jurisdiction Act (NHCCJA), N.H.Rev.Stat.Ann. Sections 458–A:1 to –:25 (1983). Father contends (1) that New Mexico, rather than New Hampshire, had jurisdiction to make a custody determination, and (2) that the trial court erred in enforcing the New Hampshire order and in dismissing his petition for a custody determination in New Mexico. Mother has requested attorney fees on appeal. We affirm.

## FACTS AND PROCEEDINGS BELOW

Father and mother have never been married, although they were living together when the child was born in 1973. In 1976, mother and father separated. The child continued to live with father, but mother saw her regularly.

Mother moved to New Hampshire in 1980. Father sent the child to New Hampshire for summer visits during the summers of 1981, 1982, and 1983. Before the child left for the summer visit in 1983, she and father discussed the possibility of her remaining in New Hampshire for the following winter. The child remained with mother the following winter, returning to New Mexico for the Christmas holidays.

According to father, the parties agreed that, at the end of the 1983–1984 school year, the child would decide where she wanted to live. According to mother, mother did not agree to this.

In June, 1984, mother decided to seek legal custody of the child. She consulted New Hampshire counsel. According to her testimony, she told father what she intended to do.

Father immediately went to New Hampshire. By this time, the child had decided she wanted to live with father. Against the mother's will, but with the child's consent, father brought the child back to New Mexico.

Within a day or two, mother's proceedings had been filed, and she had obtained, ex parte, a temporary custody order. By the terms of the order, custody was "awarded ex-parte to the plaintiff, without prejudice to defendant's rights or inter-

ests." In addition, the New Hampshire court provided that its order "shall continue until there is a hearing on said temporary custody if requested by defendant."

A week later, mother filed an action in New Mexico, seeking enforcement of the New Hampshire order and an injunction against the father's litigation of custody in New Mexico. A day later, father filed his own petition for custody in New Mexico. The two actions were consolidated and expedited by the New Mexico court. During the proceedings, the New Mexico court attempted to obtain information from the New Hampshire court by telephone but was unable to do so. It is unclear whether the New Hampshire court refused to respond or whether an appropriate official was not available.

After a hearing, the New Mexico court ruled in favor of mother, finding that New Hampshire had jurisdiction, that the New Hampshire proceeding was instituted first, and that, under these circumstances, the New Mexico court must defer to New Hampshire's exercise of jurisdiction and enforce orders of its court. The trial court also found, however, that the New Hampshire court order did not exclude visitation rights. Consequently, the trial judge permitted the child to stay with father for the summer, subject to further action by the New Hampshire court. Father was required to give custody to mother not later than ten days prior to the beginning of the school year in New Hampshire. In addition, father was enjoined from contesting custody in any New Mexico court until the New Hampshire court ceased to exercise jurisdiction, and his New Mexico custody petition was dismissed. The trial court refused to award either party attorney fees.

Father appealed the trial court's order. While the appeal was pending, and prior to the time the child was scheduled to return to New Hampshire, father moved the trial court for a stay. While that motion was pending, father moved this court for a temporary stay, alleging that the New Hampshire order had expired under New Hampshire law ten days after entry, that the

child now was enrolled in school in New Mexico, and that the trial court had not acted on the motion. We remanded the case to the trial court.

The trial court, after a hearing, denied father's motion. Father renewed his motion for an order from this court, staying proceedings pending disposition of the appeal. Mother opposed the stay and requested this court to award attorney fees, noting that father filed his motion for a temporary stay from this court two days after filing his motion with the trial court. This court denied father's motion and held mother's request in abeyance pending disposition of the appeal.

## WHETHER THE TRIAL COURT ERRED IN DEFERRING TO NEW HAMPSHIRE'S EXERCISE OF JURISDICTION

Father claims that the trial court erred in ruling that it was required to defer to New Hampshire's exercise of jurisdiction. He makes several related arguments.

First, he contends that the trial court erred in not considering the PKPA. Next, he contends that had the trial court considered the PKPA, it should have concluded that New Hampshire did not have jurisdiction under its own laws or under the PKPA. Father also contends that had the trial court considered the PKPA, it should have concluded that New Mexico had jurisdiction, because the child was on an extended visit in New Hampshire. In connection with these arguments, father claims the trial court erred in relying solely on the allegations contained in the New Hampshire petition. Finally, he contends that New Hampshire lacked jurisdiction under the PKPA, because he had not had notice and an opportunity to be heard in New Hampshire at the time he filed his petition in New Mexico.

We do not consider all of father's arguments separately. We should affirm a correct result at trial even if reached for the wrong reason. *H.T. Coker Construction Co. v. Whitfield Transportation, Inc.*, 85 N.M. 802, 518 P.2d 782 (Ct.App.1974). On these facts, there is no inconsistency between the PKPA and the CCJA. Under

both, there is a limitation on the trial court's authority to act. Thus, whether or not the trial court should have addressed the application of the PKPA prior to addressing the application of the CCJA, *see Mitchell v. Mitchell,* 437 So.2d 122 (Ala. Civ.App.1982), father has not demonstrated prejudice.

■ In addition, father relies on the trial court's oral remarks for his conclusions that the trial court applied state law rather than federal, and that the trial court relied on mother's allegations in her petition. Oral remarks may not be relied upon for reversal. *Marcus v. Cortese,* 98 N.M. 414, 649 P.2d 482 (Ct.App.1982).

The trial court's order states that deference is required under applicable law. The question is whether deference was required. Father's other arguments address this question. In answering these arguments, we first address the trial court's authority under the statutes, then we answer father's remaining arguments.

## THE TRIAL COURT'S AUTHORITY TO ACT

The primary purpose of acts such as the PKPA and CCJA is to avoid jurisdictional competition and conflict in making custody awards. § 40–10–2(A); N.H.Rev.Stat.Ann. § 458–A:1(I)(a); Pub.L. 96–611, § 7(c)(5). *See also Belosky v. Belosky,* 97 N.M. 365, 640 P.2d 471 (1982). Another purpose is to facilitate the orderly resolution of child custody disputes between parents located in different states. *State ex rel. Department of Human Services v. Avinger,* 24 SBB 1259 (Ct.App.1985), *cert. granted* November 18, 1985. To advance these purposes, the different custody acts, in various ways, require deference to the jurisdiction of the court in which proceedings are first commenced. *See* R. Crouch, *Interstate Custody Litigation: A Guide to Use and Court Interpretation of the Uniform Child Custody Jurisdiction Act* (BNA 1981). *See also People ex rel. Cusano v. Leone,* 43 N.Y.2d 665, 401 N.Y.S.2d 21, 371 N.E.2d 784, n. 1 (1977); *Child Custody in New Hampshire: The Uniform Child Custody*

*Jurisdiction Act,* 23 N.H.B.J. 101 (1982); Commissioners' Note to Section 3, UCCJA, 9 U.L.A. 123 (1979).

For example, the acts all provide that courts to which a custody determination is addressed shall not exercise jurisdiction during the pendency of a proceeding in another state, if the court of that state is exercising jurisdiction in the matter consistently with the acts. § 40–10–7; 28 U.S. C.A. § 1738A(g). The uniform state acts provide that courts shall recognize and enforce the decrees of other states if made substantially in accordance with the uniform act or under factual circumstances meeting its jurisdictional standards; the federal act provides that courts shall enforce and shall not modify the decrees of other states if made consistently with the provisions of the federal act. § 40–10–14; 28 U.S.C.A. § 1738A(a). The acts also provide that courts shall not modify the decrees of other states unless the courts of the other states no longer have jurisdiction or have declined to exercise jurisdiction. § 40–10–15; 28 U.S.C.A. § 1738A(f). Thus, in limiting the authority to act as well as in requiring the extension of full faith and credit, the acts promote the purposes behind their enactment.

Father's proceeding in New Mexico was commenced after mother had commenced proceedings in New Hampshire. If that court was exercising jurisdiction consistently with the provisions of the PKPA, and if the proceedings were pending within the meaning of the PKPA, the New Mexico court was precluded, under federal law, from exercising jurisdiction. *See* 28 U.S. C.A. § 1738A(g). The CCJA contains a similar prohibition. *See* § 40–10–7(A).

The PKPA does not specifically indicate under what circumstances a court is exercising jurisdiction consistently for purposes of 28 U.S.C.A. Section 1738A(g). The federal act specifically provides that a child custody determination is consistent with its provisions if the court making that determination has jurisdiction under its own laws, *see* 28 U.S.C.A. Section 1738A(c)(1), and if

one of the other statutory jurisdictional prerequisites is met, *see* 28 U.S.C.A. Section 1738A(c)(2). In view of the purposes behind the acts, we conclude the same test is applicable under Section 1738A(g).

The CCJA requires that the other state must be exercising jurisdiction "substantially in conformity with the Child Custody Jurisdiction Act...." § 40–10–7(A). In addition to the requirements imposed by the PKPA, this language suggests that the other state must have enacted the uniform act or comparable legislation, or that the court is otherwise subject to similar requirements. *See Brenner v. Cavin,* 163 Ga.App. 694, 295 S.E.2d 135 (1982).

Under the NHCCJA, that state had jurisdiction to make a custody determination if New Hampshire was the home state of the child at the time of the commencement of the proceedings or had been the home state within six months before the commencement of the proceedings, and the child was absent from the state because of her removal. N.H.Rev.Stat.Ann. § 458–A:3(I)(a). The PKPA imposes a similar jurisdictional prerequisite. *See* 28 U.S.C.A. § 1738A(c)(2)(A). Congress defined "home state" as the state in which "immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months...." *See* 28 U.S.C.A. § 1738A(b)(4). Congress expressly provided that periods of temporary absence are to be included in calculating the six-month period. *Id.*

Under the relevant custody acts, and on the record before us, we view father's arguments as challenging New Hampshire's exercise of jurisdiction on three grounds: (1) New Hampshire did not have jurisdiction under its own laws, because that state does not provide for temporary absences and the child was absent from New Hampshire during the requisite six-month period; (2) New Mexico, rather than New Hampshire, was the child's home state, because her absence from New Mexico was a temporary one under the PKPA; (3) because he did not have notice of and an opportuni-

ty to be heard in New Hampshire, the New Hampshire proceedings were not pending within the meaning of the PKPA. We address each issue separately.

### 1. New Hampshire's Jurisdiction Under Its Own Laws

■ Father argues that the child's absence from New Hampshire and presence in New Mexico over the Christmas holidays precludes New Hampshire from exercising jurisdiction over a custody petition filed on June 21. The NHCCJA does not contain the same language concerning temporary absences as the PKPA and the CCJA in its definition of home state. The NHCCJA also uses the word "resided" in its definition of home state while the other acts use the words "lived with." *Compare* N.H. Rev.Stat.Ann. § 458–A:2(V) *with* § 40–10–3(E) and 28 U.S.C.A. § 1738A(b)(4). Father's argument is incorrect.

Under New Hampshire statute law, residence for purposes of domicile is not lost or interrupted by a temporary absence. *See* N.H.Rev.Stat.Ann. § 21:6–a (Cum.Supp. 1985). Under New Hampshire case law, the term "resides" as used in other statutes is defined similarly. *See In re Bryan L.,* 123 N.H. 420, 462 A.2d 108 (1983); *See also* N.H.Rev.Stat.Ann. § 21:6–a.

Although N.H.Rev.Stat.Ann. § 21:6–a appears to equate residence with domicile, the court in *Brauch v. Shaw,* 121 N.H. 562, 432 A.2d 1 (1981), ruled that regardless of the facts behind the presence of the child in New Hampshire, the fact that the child was present in New Hampshire for the requisite number of months conferred jurisdiction on the court. The court said, "New Hampshire is the child's 'home state' because he has lived here for more than the six statutory consecutive months immediately prior to the commencement of the custody proceeding." *Id.* at 571–72, 432 A.2d at 6. Thus, for NHCCJA purposes, the New Hampshire Act's definition of home state is construed identically with the PKPA and the CCJA. *See also Bergstrom v. Bergstrom,* 271 N.W.2d 546 (N.D.1978) (home

state is determined by presence rather than locus of legal residence).

## 2. The Child's Home State Under the PKPA

■ Father also argues that the child's presence in New Hampshire during the 1983–1984 school year was a temporary absence from New Mexico and, thus, New Mexico continued to be the child's home state. Father relies on the trial court's oral remarks as a finding that the child was in New Hampshire for an extended visit. He also relies on the PKPA provision that periods of temporary absence are counted in establishing the six-month period that is critical to a determination of a child's home state. *See* 28 U.S.C.A. § 1738A(b)(4).

Father's argument must be rejected. When reviewing factual contentions on appeal, an appellate court resolves all conflicts in the evidence and draws all reasonable inferences in favor of the trial court's findings. *State v. Lankford,* 92 N.M. 1, 582 P.2d 378 (1978). The record contains conflicting evidence on the reason for the child's presence in New Hampshire. Mother testified she did not agree to the child having a free choice of where she would live after a year in New Hampshire or to the child's choice. Further, reversible error may not be based on the trial court's oral remarks. *Marcus v. Cortese.*

Father's reliance on *Tufares v. Wright,* 98 N.M. 8, 644 P.2d 522 (1982), is misplaced. *Tufares* involved an absence of less than two weeks. Here, the child was absent for a year. Such an extensive absence cannot qualify as temporary. *But see In Re Patricia R. v. Andrew W.,* 121 Misc.2d 103, 467 N.Y.S.2d 322 (Fam.Ct. 1983).

The major device by which the PKPA undertakes to advance its purposes is the home state requirement. The interpretation of that requirement as ordinarily imposing only a residency requirement better serves the purposes of the PKPA. *See Brenner v. Cavin.* Thus, for policy reasons as well as procedural ones, father's argument must be rejected.

## 3. The Effect of Lack of Notice and a Prior Hearing on the New Mexico Trial Court's Authority

■ Finally, it is clear father was not notified of the New Hampshire proceedings prior to the entry of the ex parte order. Father contended below, and apparently maintains on appeal, that the lack of notice precluded New Hampshire's jurisdiction from being consistent with the PKPA and that New Mexico was not required to defer to New Hampshire. *See* 28 U.S.C.A. § 1738A(g). *See also Houtchens v. Houtchens,* 488 A.2d 726 (R.I.1985). Other cases that have considered the issue suggest different analyses.

Some courts have held that unless the notice requirements of the relevant custody acts have been satisfied, no case is pending. *See Snow v. Snow,* 369 N.W.2d 581 (Minn.App.1985). Others recognize that a court does not lose subject matter jurisdiction because it has not yet satisfied the notice requirements imposed by the various acts. *Wachter v. Wachter,* 439 So.2d 1260 (La.App.1983); *Application of Pierce,* 184 Mont. 82, 601 P.2d 1179 (1979); *In Re Priscilla S. v. Albert B.,* 102 Misc.2d 650, 424 N.Y.S.2d 613 (Fam.Ct.1980).

The better rule, in our view, mandates deference to New Hampshire on the basis of mother's prior filing in that state. Thus, we recognize priority on the basis of priority in time and hold that the trial court acted properly in enjoining the father from seeking custody in New Mexico while proceedings were pending in New Hampshire. *But see Snow v. Snow; Houtchens v. Houtchens.* We adopt this analysis because it is the approach that is most consistent with prior New Mexico cases. We also adopt this analysis as most consistent with the purpose of the relevant custody acts.

The purpose of the custody acts is to reduce, rather than proliferate, custody litigation. *See Neal v. Superior Court of Los Angeles County,* 84 Cal.App.3d 847, 148

Cal.Rptr. 841 (1978). Consequently, courts should not act in custody matters when proceedings have commenced in courts in other states in accordance with the jurisdictional requirements of the PKPA and applicable state law. To hold otherwise would result in more jurisdictional competition. Thus, New Mexico trial courts are not entitled to engage in their own custody determinations once proceedings are pending in other states, even if process has not yet been served. *See Wachter; Pierce; Priscilla S.* Whether an order entered in another jurisdiction is enforceable in a second jurisdiction is a separate question from whether the second jurisdiction has limited authority to act.

On the record before us, we need not decide what constitutes the operative event in one state that precludes another state from exercising jurisdiction. *Compare Peterson v. Peterson,* 464 A.2d 202 (Me.1983) (filing of a complaint is not the determinative event for purposes of the PKPA and the uniform acts) *and Potter v. Potter,* 104 Misc.2d 930, 430 N.Y.S.2d 201 (1980) (no proceeding pending in Wisconsin when complaint filed but not yet served when, under Wisconsin law, commencement of an action was conditional on service within sixty days). In this case, New Hampshire had entered a temporary order. In addition, under New Hampshire law, as under New Mexico law, it appears that a suit is commenced when filed with intent to serve process. *Anderson v. Aetna Life Ins. Co.,* 75 N.H. 375, 74 A. 1051 (1909); *see also* NMSA 1978, § 37–1–13.

## WHETHER THE TRIAL COURT ERRED IN ORDERING FATHER TO RETURN CUSTODY TO MOTHER AND IN DISMISSING HIS PETITION

In addition to his arguments that the trial court erred in deferring to New Hampshire's exercise of jurisdiction, father also claims the trial court erred (1) in enforcing the ex parte order, and (2) in dismissing his petition for a custody determination in New Mexico prior to receiving a response from the New Hampshire court. We hold that no reversible error occurred.

### 1. Enforcement of the Ex Parte Order

Father argued at trial that New Hampshire lacked jurisdiction under the PKPA, among other reasons, because he had not had notice and an opportunity to be heard. He specifically argues on appeal that the order should not have been enforced because it was entered ex parte. Mother contends that this court need not reach the issue of enforcement because father did not preserve the issue at trial and because the issue is moot. We need not decide whether father's argument at trial was sufficient to preserve the issue. We hold that he has not established reversible error.

■ Mother's mootness argument arises because the New Hampshire order was temporary and because the child was eventually returned to New Hampshire. Mother argues that, the child having been returned to New Hampshire, no practical relief could be afforded father by this court ruling that the trial court should not have enforced the New Hampshire order granting temporary custody to mother.

The question presented is of public interest and might bear upon subsequent litigation by these parties. *Freeman v. Medler,* 46 N.M. 383, 129 P.2d 342 (1942). Moreover, the fact that the child was returned to New Hampshire because this court refused to stay the proceedings should not terminate the right of the public and the father to have this question resolved on appeal. *See City of Albuquerque v. Campos,* 86 N.M. 488, 525 P.2d 848 (1974). Accordingly, we reach the issue.

■ The relevant custody acts provide that reasonable notice and an opportunity to be heard shall be given to contestants before a decree or order is made. 28 U.S. C.A. § 1738A(e); § 40–10–5; N.H.Rev.Stat. Ann. § 458–A:4. A number of cases have held that lack of notice, while not resulting in a loss of subject matter jurisdiction, does preclude the enforcement of an order entered without notice. *Wachter; Pierce; Priscilla S.* Because of due process considerations, the notice requirements of the

PKPA and the uniform state acts have been stringently applied. *See* Garfield, *Due Process Rights of Absent Parents in Interstate Custody Conflicts: A Commentary on In re Marriage of Hudson,* 16 Ind.L.Rev. 445, 466 (1983). For these reasons, in the absence of proper notice, the temporary New Hampshire order was not enforceable.

■ Notwithstanding our conclusion that the New Hampshire order was not enforceable, father has not demonstrated that he was prejudiced by the order the trial court entered. In the absence of prejudice, we will not reverse.

The trial court's order was entered July 23, and the record indicates that on August 20 or 21, mother informed father than he should return the child to New Hampshire on August 25. In response to father's request for a stay pending appeal, the trial court ruled that the date on which father was to return the child had arrived. In effect, then, father received a stay of about a month. Since father has advised this court that the New Hampshire order expired within ten days, we are not persuaded that he has been prejudiced by the trial court's enforcement of that order. In addition, father's petition for custody in New Mexico asked the court for a temporary order, restraining mother from taking the child until a hearing could be held in New Hampshire. Subsequently, father asked for a permanent injunction against mother's removing the child until a permanent order was filed by the New Mexico court. The trial court's order granting summer visitation and ordering that the child be returned in the fall is consistent with father's original request. The record indicates that motions were pending in New Hampshire at the time the trial court ruled in July.

In analogous situations, other courts have entered temporary orders preserving the status quo, in order to permit a party to make arguments in the jurisdiction where proceedings were commenced first. *See Fry v. Ball,* 190 Colo. 128, 544 P.2d 402 (1975) (En Banc). We need not decide whether such an order is an authorized exercise of jurisdiction, while proceedings are pending in another jurisdiction. Mother did not appeal and father cannot complain of the delay in enforcement. *See Hodgkins v. Christopher,* 58 N.M. 637, 274 P.2d 153 (1954).

**2. Dismissal of the New Mexico Proceeding**

■ Father argues that the failure of the trial court to make actual contact with the New Hampshire court renders the trial court's dismissal of his petition patently premature and contrary to the public policy expressed in the CCJA. In this case, the trial court made a good faith effort to communicate with the New Hampshire court, and the record indicates the New Hampshire court refused, or was unable, to respond while the New Mexico proceedings were pending. While communication may be desirable, lack of communication does not defeat jurisdiction in New Hampshire. Crouch, *supra,* at 17. *See also In re Irene R. v. Inez H.,* 96 Misc.2d 947, 410 N.Y.S.2d 53 (Fam.Ct.1978). In addition, father's petition was dismissed without prejudice.

Under the facts of this case, father has not demonstrated any error. The trial court acted properly in deferring to New Hampshire's exercise of jurisdiction, because the relevant custody acts limited its authority. Had the trial court refused to enforce the ex parte order, mother would have been required to seek further relief in New Hampshire. Father would have had an opportunity to contest in that state. Since the parties advised the trial court that motions were pending in New Hampshire, the trial court did not err in dismissing father's petition. Under the facts of this case, there was no reason to retain jurisdiction that could not be exercised.

**ATTORNEY FEES**

■ In the trial court, the judge required the parties to each bear his or her own costs and attorney fees. We do the same. *See Allen v. Allen,* 98 N.M. 652, 651 P.2d 1296 (1982). *Cf. Hester v. Hester,* 100 N.M. 773, 676 P.2d 1338 (Ct.App.1984).

Mother's request for attorney fees is premised in part on father's actions in seeking a stay. Our review of the record does not indicate his decision was unreasonable or that he acted in bad faith. The trial court was not persuaded that economic disparity required an award. For these reasons, no attorney fees are awarded.

## CONCLUSION

The order of the trial court enjoining father from contesting custody in New Mexico while New Hampshire proceedings are still pending is affirmed. The order enforcing the New Hampshire ex parte decree and dismissing father's petition without prejudice is also affirmed. No costs are awarded.

IT IS SO ORDERED.

BIVINS and ALARID, JJ., concur.