## A99A1293. THOMPSON v. THOMPSON.
(526 SE2d 576)

PHIPPS, Judge.

This is a child custody dispute which former spouses Tommy and Cynthia Thompson have litigated in the courts of Georgia and Florida. The Georgia court awarded permanent custody to the mother. The Florida court later changed custody to the father. We granted the mother's application for discretionary appeal of an order of the Georgia court domesticating the Florida court's custody modification award. Jurisdictional issues are raised under the Uniform Child Custody Jurisdiction Act (UCCJA), which has been enacted in both Georgia and Florida, and under the federal Parental Kidnapping Prevention Act (PKPA).

The parties were married in Florida in 1986. Later that year, they moved to Georgia where they had two children, one born in September 1986 and the other in September 1990. In June 1992, the family moved to North Carolina but then back to Florida between February 27 and March 1, 1994. After leaving North Carolina, the family resided in Florida until August 8, whereupon the mother took the children and moved to Georgia where her parents lived. According to the mother, she fled the marital residence in Florida to escape domestic abuse. According to the father, she simply absconded with the children.

On September 8, the mother instituted a separate maintenance proceeding in the Cherokee Superior Court. Among other things, she sought child custody. The father appeared in the proceeding and sought to dismiss based on lack of jurisdiction. On October 13, the father filed a divorce petition in the Circuit Court for Leon County, Florida. He too sought child custody. The mother answered the divorce petition and moved to dismiss for lack of subject matter jurisdiction. She also counterpetitioned for divorce and child custody. The Florida court was informed of the pendency of the Georgia action in both the divorce petition and counterpetition.

On November 16, the Georgia superior court entered an order finding that it had jurisdiction under the UCCJA. The court awarded permanent custody of the children to the mother with supervised visitation to the father at a location to be decided by the mother. This order was not appealed. In December 1995, the Florida circuit court entered a judgment finding that it had personal and subject matter jurisdiction in the divorce action and dissolved the parties' marriage but deferred ruling on other issues. In February, the Florida court entered an order recognizing the existence of the custody award entered in the separate maintenance proceeding in Georgia but denying the mother's motion to dismiss the Florida action. She did not appeal. In June 1996, the Florida court entered an order awarding

the mother temporary custody of the children, granting the father supervised followed by unsupervised visitation in Georgia during 20 alternating weekends, and reserving jurisdiction over child custody issues. In May 1998, the Florida court entered an order expanding the father's visitation rights and allowing him to exercise them in Florida but providing that they would be supervised.

The mother then filed a complaint in the Cherokee Superior Court seeking a declaratory judgment as to the rights of the parties under the conflicting child custody orders entered in Georgia and Florida. Approximately two weeks later, the Florida court entered an order finding the mother in contempt of visitation orders it had entered within the prior month and in repeated violation of others. The court proceeded to award custody of the children to the father. A week later, the father filed a complaint in the Cherokee Superior Court seeking domestication of the Florida court's custody modification order.

Initially, the Georgia superior court conducted a hearing at which it found that at present Georgia is probably the "home state" of the children under the UCCJA but stating that it would stay the actions filed by the mother and father while referring the matter to the Florida court for jurisdictional findings and recommendations. The Florida court later entered a judgment finding that UCCJA jurisdiction of this dispute was and is in Florida. The court adhered to its earlier decision to award child custody to the father, finding that this would be in the best interests of the children.

At a subsequent hearing, the Georgia superior court ruled that the mother is barred from contesting the jurisdiction of the Florida court because she was a party to the divorce proceeding and did not appeal the denial of her motion to dismiss. The court also determined that, at least under Georgia law, the divorce action superseded the separate maintenance proceeding. After considering a motion by the mother to stay domestication of the Florida judgment, the Georgia court held two additional hearings and then entered the order of domestication. *Held*:

Section 3 of the UCCJA provides that a state court which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree under four delineated circumstances.[1] The first is when the state is or had been the "home state" of the child; the second is when the child and at least one of his parents has a "significant connection" with the state; the third is in an "emergency"; and the fourth is where no other

---

[1] See OCGA § 19-9-43 (a); *Youmans v. Youmans*, 247 Ga. 529, 532 (276 SE2d 837) (1981).

state has jurisdiction under prerequisites substantially in accord with the UCCJA and the state at issue is the more "appropriate forum" to determine child custody.[2]

A state is the home state of the child if the child and his parents or parent have lived in the state for at least six consecutive months.[3] A state court has "home state" jurisdiction if it is the home state when the proceeding is commenced or had been the home state within six months before the commencement of the proceeding and the child is absent from the state because of his removal or retention by a parent or person claiming custody.[4] "Significant connection" jurisdiction exists if the child and his parents or the child and at least one contestant have a significant connection with the state, and it is in the best interest of the child that the court assumes jurisdiction because there is available in the state substantial evidence concerning the present or future circumstances of the child.[5] "Emergency" jurisdiction requires the physical presence of the child in the state coupled with abandonment or with actual or threatened mistreatment, abuse, or neglect.[6] A state may be the "appropriate forum" where no other state has UCCJA-type jurisdiction or has declined to exercise such jurisdiction on the ground that the state at issue is the more appropriate forum and assumption of jurisdiction would be in the child's best interest.[7]

Consequently, jurisdiction of a custody dispute under section 3 of the UCCJA is primarily based on the existence of a sufficient connection between the child or children and the state.[8] The jurisdictional standards in subsection (c) of the PKPA[9] are substantially the same as those in UCCJA section 3.

Where a state court has exercised or is exercising jurisdiction "consistently with" or "substantially in conformity with" the forego-

---

[2] OCGA § 19-9-43 (a) (1)-(4).

[3] OCGA § 19-9-42 (5).

[4] OCGA § 19-9-43 (a) (1).

[5] OCGA § 19-9-43 (a) (2).

[6] OCGA § 19-9-43 (a) (3).

[7] OCGA § 19-9-43 (a) (4).

[8] Although jurisdiction of a custody dispute under the UCCJA is referred to as "subject matter" jurisdiction, *Wilson v. Gouse*, 263 Ga. 887 (441 SE2d 57) (1994), it is not subject matter jurisdiction in the traditional sense of that term. See *Craighead v. Davis*, 162 Ga. App. 145, 146 (1) (290 SE2d 358) (1982) (holding that a Georgia superior court had subject matter jurisdiction in a case governed by the UCCJA because the Georgia Constitution grants superior courts jurisdiction over interstate child custody disputes). The UCCJA contains no express requirements concerning personal jurisdiction and, in fact, authorizes a court to assume jurisdiction over a custody dispute notwithstanding the absence of a connection between the state and a parent or contestant. In a sense, UCCJA jurisdiction is akin to in rem jurisdiction, with the child or children being the res.

[9] 28 USC § 1738A (c) (2) (A)-(D).

ing jurisdictional standards, both subsection (g) of the PKPA[10] and section 6 (a) of the UCCJA[11] preclude the court of another state from exercising jurisdiction in any custody proceeding commenced during the pendency of the earlier proceeding, although the UCCJA permits the court in the later action to assume jurisdiction if the earlier proceeding is stayed because the other state is a more appropriate forum or for other reasons. Where a court is informed that a previously filed custody proceeding is pending in another state, section 6 (c) of the UCCJA states that the court must stay the action and communicate with the other court to the end that the issue may be litigated in the more appropriate forum.[12] Section 6 (c) has been described as " 'the very essence of' the UCCJA because when it is strictly complied with, jurisdictional conflicts are resolved and conflicting orders prevented. [Cit.]"[13]

Although informed of the pendency of the previously filed custody proceeding in Georgia, the Florida court assumed jurisdiction over issues of child custody in the divorce action in disregard of the requirement imposed by section 6 (c). The Florida court proceeded in this manner even though it appears without dispute from the record in this case that neither Florida nor Georgia was the home state of the children when the separate maintenance and divorce actions were filed, and Georgia had at least as arguable a claim to jurisdiction under other UCCJA/PKPA standards as did Florida.

Nonetheless, in the respective proceedings the Georgia and Florida courts determined that they each had UCCJA jurisdiction. Because both parents were parties to the proceedings in both states, neither should be able to relitigate the jurisdictional issues. In the words of *Chaddick v. Monopoli*, this would give them an impermissible "second bite of the apple."[14] Because the Georgia proceeding was the first to be filed, the husband is the first to be barred.

Moreover, by the time the Florida court modified the Georgia custody order so as to transfer custody to the father, Georgia unquestionably was the home state of the children. Under section 14 of the UCCJA[15] and subsection (f) of the PKPA,[16] a court of a state may modify a custody determination of a court of another state only if the court issuing the modification decree has jurisdiction and the court rendering the initial decree no longer has jurisdiction or declines to exercise it.

---

[10] 28 USC § 1738A (g) ("consistently with").

[11] OCGA § 19-9-46 (a) ("substantially in conformity with").

[12] OCGA § 19-9-46 (c).

[13] *Chaddick v. Monopoli*, 714 S2d 1007, 1010 (Fla. 1998).

[14] Id. at 1010-1011.

[15] OCGA § 19-9-54 (a).

[16] 28 USC § 1738A (f); see *Garrett v. Garrett*, 267 Ga. 356, 357 (1) (477 SE2d 804) (1996).

The superior court determined that the modification award is nonetheless entitled to domestication under Georgia law giving divorce decrees priority over separate maintenance orders. In this regard, cases such as *Browne v. Browne*[17] and *Southworth v. Southworth*[18] hold that under our separate maintenance statute (OCGA § 19-6-10), adjudication of the issue of permanent alimony in a separate maintenance order is superseded by an award of alimony in a divorce decree. But OCGA § 19-6-10 does not make specific reference to child custody orders. And under Georgia's Child Custody Intrastate Jurisdiction Act (CCIJA), a permanent award of child custody to any person by court order prohibits the filing of any complaint seeking to obtain a change of custody in any county other than the county of residence of the person who has been awarded custody.[19] Consequently, where permanent child custody has been awarded to a party to a separate maintenance proceeding, the other party is not necessarily entitled to obtain a change of custody in a subsequent divorce action. The CCIJA acts as a constraint. It follows that the UCCJA and PKPA have the same effect, as the purpose of all three statutes is the avoidance of jurisdictional conflicts. In this case, the Florida court's award of custody to the father is not entitled to recognition under either the UCCJA or the PKPA.

*Judgment reversed. Smith, J., concurs. Pope, P. J., concurs specially.*

POPE, Presiding Judge, concurring specially.

I agree with the majority that the Florida court never had subject matter jurisdiction to determine custody of the children. But in my opinion, the question of whether Florida divorce proceedings supersede custody determinations in Georgia separate maintenance actions is therefore moot. Because the Florida court never had jurisdiction of custody issues, it could not make any custody ruling that might supersede an earlier ruling.

DECIDED DECEMBER 3, 1999 —
RECONSIDERATION DENIED DECEMBER 20, 1999.

*William C. Gentry*, for appellant.
Tommy J. Thompson, *pro se*.

---

[17] 242 Ga. 107 (249 SE2d 594) (1978).
[18] 265 Ga. 671, 672 (1) (461 SE2d 215) (1995).
[19] OCGA §§ 19-9-22; 19-9-23.